## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON  DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:06CR00040 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **SAMUEL ROBERT CONRAD, III,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; John T. Stanford, Assistant Federal Public Defender, Abingdon, Virginia, for Samuel Robert Conrad, III.*

Samuel Robert Conrad, III, was acquitted of criminal charges in this court solely by reason of insanity.  Following a medical evaluation and subsequent hearing, the court found that he should be civilly committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4243(e) until he has recovered from his mental disease or defect.  The Warden of the Federal Medical Center in Rochester, Minnesota, has now certified that Conrad has recovered from his mental disease or defect to such an extent that his conditional release would not create a substantial risk of bodily injury to another person or serious damage to the property of another. The question before the court is whether the defendant should be discharged upon conditions, pursuant to 18 U.S.C. § 4243(f)(2).  A hearing was held on September

15, 2021, and the question is now ripe for determination.   For the reasons set forth,

I find that Conrad should not be released on conditions.

## I.

Conrad's case has a somewhat procedurally complicated history, which I will

briefly recount.

Conrad was indicted in this case in 2006 with illegally possessing a number

of firearms after having previously been convicted of a felony and while being an

unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(1), (3)

(Count One) and knowingly possessing an unregistered, sawed-off shotgun, in

violation of 26 U.S.C §§ 5841, 5861(d), (i), and 5871 (Count Two).   The charges

resulted from his arrest by local police after they were called in response to a report

that the defendant was jumping in front of vehicles armed with a Bowie knife.   The

officers ordered him to drop the knife, and he reportedly asked them to kill him and

walked towards them waiving the knife.    His wife reported to police that he had

been acting "strange."   U.S. Bureau of Prisons, *Forensic Evaluation* 5, Nov. 17,

2006, ECF No. 26.   For example, he had called the National Geographic and

informed them that he had been dubbed a Knight of the Round Table and would

"invoke his powers"; he was paranoid and reported that because "he knew too much"

the government would kill him.   *Id.* at 6.   Upon investigation, numerous firearms

were found at his residence.  A toxicology report showed that he had tested positive for amphetamines, benzodiazepines, and cannabis.

Following a bench trial on February 22, 2007, and pursuant to a plea agreement, Conrad was found not guilty of these charges solely by reason of insanity.  In obeisance to 18 U.S.C. § 4243(b), an evaluation was ordered to be conducted by the Bureau of Prisons to determine his dangerousness.  Order, Feb. 22, 2007, ECF No. 53.   Conrad arrived at the Federal Medical Center in Butner, North Carolina, on March 1, 2007,  and after a risk assessment evaluation on March 26, 2007, it was recommended to the court that Conrad be unconditionally released. Forensic Evaluation 7, ECF No. 57.  Following a hearing and based upon the opinion of the Bureau of Prisons medical staff, I ordered Conrad released but only upon conditions as permitted under § 4243(f)(2).  Order, May 15, 2007, ECF No. 61.  The 16 separate conditions included his supervision by the Probation Office of this court and Conrad's maintenance of psychiatric care and medication. *Id.* at 2.  Conrad was accordingly released from custody on May 21, 2007.

On August 19, 2008, state authorities charged Conrad with the murder of his wife's sister, Iris Spencer Gregory.   On February 4, 2010, Conrad pleaded guilty in state court to voluntary manslaughter and received a sentence of four years and seven months of imprisonment.  Following this state conviction, a probation officer of this court filed a petition seeking to revoke Conrad's conditional discharge as a result of

his guilty plea to the manslaughter charge, as well as his possession of a firearm, possession and use of illegal drugs, and association with a convicted felon. I held a hearing, after which I revoked Conrad's conditional release pursuant to 18 U.S.C. § 4243(g) and ordered that he be taken into custody following his service of his state sentence. Order, July 5, 2010, ECF No. 100.

Conrad appealed the revocation, and the court of appeals, on the motion of the government, vacated my order revoking Conrad's conditional release and remanded the case with directions to vacate the order granting conditional release. *United States v. Conrad*, No. 10-6962, Order (4th Cir. Jan. 5, 2012). The court of appeals did not state the reasons for its rulings, but the briefings by the parties suggest that the court may have determined that it was plain error for this court to have released the defendant on conditions under § 4243(f) without first having made a separate determination that he should be committed indefinitely for treatment or released. *See United States v. Baker*, 155 F.3d 392, 395 (4th Cir. 1998) (holding that "a subsection (f) discharge hearing simply cannot, as a matter of the statute's construction, take place until after a subsection (e) disposition of commitment has occurred").[1]

---

[1]   The statute provides that a person found not guilty only by reason of insanity "shall be committed to a suitable facility until such time as he is eligible for release pursuant to subsection (e)." 18 U.S.C. § 4243(a). The statute instructs the court to order a psychological examination of the insanity acquittee and then hold a hearing within 40 days following the verdict. 18 U.S.C. § 4243(b)–(c). If after the hearing, the court fails to find

In compliance with the mandate of the court of appeals, I vacated the order granting the defendant a conditional release.  Order, Feb. 1, 2012, ECF No. 118.  In the meantime, Conrad had been indicted in a new prosecution in this court, Case No. 1:11CR00042, in which he was charged with unlawful possession of firearms and conspiracy to distribute controlled substances.  At the request of his counsel in this new case, Conrad was committed for a psychiatric evaluation.  After receiving the report of that evaluation, I held a competency hearing and found that Conrad was suffering from a mental disease rendering him mentally incompetent to the extent that he was unable to understand the nature and consequences of the proceedings against him or assist properly in his defense.  *United States v. Conrad*, Case No. 1:11CR00042 (W.D. Va. May 15, 2012).  As a result, I committed him to the custody of the Attorney General for hospitalization pursuant to 18 U.S.C. § 4241(d).  On December 14, 2012, I held a competency hearing in Case No. 1:11CR00042 and found that Conrad's competency had been restored.  Conrad subsequently entered a guilty plea in Case No. 1:11CR00042 and was sentenced to eight years of imprisonment followed by three years of supervised release.

---

that the person's release would not create a substantial risk of danger to person or property, the court must commit him to the custody of the Attorney General for hospitalization until his mental condition is such that his release "would not create a substantial risk of bodily injury to another person or serious damage to property of another."  18 U.S.C. § 4243(e). The statute places upon the acquittee the burden of proof at the hearing.  *Id.* at § 4243(d).

In the present case, the effect of the Fourth Circuit's ruling directing me to vacate the original granting of conditional release left unresolved a hearing under 18 U.S.C. § 4243(c)–(e) to determine whether he should be released after his 2006 acquittal solely by reason of insanity. I decided to delay such a hearing until after his service of the federal sentence imposed in Case No. 1:11CR00042, when his future dangerousness could be better determined. Op. & Order, August 26, 2013, ECF No. 141. Conrad appealed, but the court of appeals affirmed. *United States v. Conrad,* 776 F.3d 253, 262 (4th Cir. 2015).

In 2019, in anticipation of his release from his federal sentence, Conrad was committed for an evaluation of his dangerousness pursuant to 18 U.S.C. § 4243(b). Following that evaluation, on July 2, 2019, the Warden of the Federal Medical Center at Butner, North Carolina, issued a Certificate of Mental Disease or Defect and Dangerousness. ECF No. 158. Following a hearing in which the defendant presented no contrary evidence, Conrad was accordingly committed for an indefinitely period pursuant to § 4243(a). Order, Oct. 4, 2019, ECF No. 171. Now, less than two years later, the Warden of a different BOP medical facility recommends that he be discharged from custody on conditions. Certificate of Conditional Release, May 25, 2021, ECF No. 173. The government objects, and a

hearing has been held on this recommendation, where counsel for the United States and appointed counsel for Conrad presented argument and evidence was received.[2]

## II.

Conrad is 58 years old. According to the Bureau of Prisons' latest Risk Assessment report, dated February 2, 2021, upon which the Certificate of Conditional Release is based, he has a "well-documented history of mental illness," including "a history of manic and depressive symptoms including excessive energy, racing thoughts, inability to sleep, crying, sad mood, and suicidal ideation."  Fed. Medical Ctr., Rochester, Minn., Risk Assessment 3, ECF No. 173-1.  He first saw a mental health provider at age 13 and was first hospitalized at age 16 because of his anger issues.  He left home as a teenager and began living at the clubhouse of a local Pagan motorcycle gang.  He reported three separate head injuries over the years from DUI-caused vehicle accidents, causing hospitalization and shorts periods of memory loss and slurred speech.  He has had a limited education and employment history and has been receiving social security disability income since 2000 based on his mental

---

[2] Conrad was present by audio video connection with his consent but did not testify. Two probation officers of this court familiar with Conrad from his previous supervision by them testified.  I have also considered the latest Risk Assessment, prior presentence investigation reports, the prior FMC Butner forensic evaluation, a list of Conrad's medications, and a certificate he received in 2020 at the Federal Medical Center for a Wellness Recovery and Action Plan.

disorders.  He has a long history of substance abuse, including alcohol and drugs, beginning as a teenager.

Conrad attempted suicide by hanging at age 25 but was discovered in time and saved.  He was treated on an outpatient basis for several years but discontinued that treatment and at age 43 was involuntarily committed to a state hospital and diagnosed with schizoaffective disorder, bipolar type.  He reported 10 lifetime arrests for domestic violence, possession of cocaine, and driving under the influence. Following his conditional release by this court in 2007, he suddenly stopped taking his medication and began using methamphetamine.  He had a violent confrontation with a Pagan gang member, whom he reportedly "nearly 'beat to death'" with a baseball bat.  *Id.* at 6.   According to the testimony at the hearing by a probation officer, following a period of good behavior during his prior supervision, he decompensated in a matter of days leading him to stealing drugs from the Pagans, attacking the gang member, and participating in the murder of his wife's sister.

Conrad's sister was interviewed in 2019 by the Bureau of Prisons evaluators and reported that that Conrad had "engag[ed] in violence in the home such as being physically violent toward family members, putting his fist through walls, and throwing railroad ties." *Id.* at 6–7.  Conrad reported that at times he has heard voices in his head telling him to "do things that are dangerous" and "to hurt people if they

needed hurting," and has followed those directions.  Fed. Med. Ctr., Butner, N.C., Forensic Evaluation 4, June 15, 2019, ECF No. 158.

While in prison, Conrad completed a non-residential drug treatment program and there is no evidence that he has used drugs while incarcerated.

According to the Risk Assessment, since being committed in October of 2019 and incarcerated at the Federal Medical Center in Rochester, Minnesota, Conrad has "demonstrated good insight" into his substance abuse history and mental illness. Risk Assessment 8, ECF No. 173-1.   At the time of the risk assessment, Conrad was being prescribed bupropion, two times daily, and an injection of Aripiprazole once a month.[3]

In his interview with a risk assessment panel convened at the Federal Medical Center on July 21, 2021, Conrad denied that he had participated in his sister-in-law's killing and stated that he had "never committed any acts of violence toward anybody" and that he had "never hurt anybody."  *Id.* at 15.[4]  He felt that he was not

---

[3] Bupropion is an antidepressant used to treat major depressive disorder. Aripiprazole is an antipsychotic primarily used to treat schizophrenia and bipolar disorder. Wikipedia, *Bupropion*, https://en:wikipedia.org/wiki/Bupropion; *id* at *Aripiprazole* (last visited Oct. 19, 2021).

[4] Conrad's codefendant in the Iris Gregory homicide case, Linwood Webster, was convicted of second-degree murder and given a 35-year sentence.  *Man Gets 35 Years in Wythe Woman's Slaying*, Wytheville Enterprise, Mar. 30, 2011, https://swvatoday.com/news/article_5d1e7687-c54e-528e-ae8d-56b09cd8f74d.html.  According to evidence presented at Webster's sentencing, both men were high on methamphetamine and went to Mrs. Gregory's home to collect money owed for work done for her and beat her with different objects, including a glass bowl.  Webster allegedly later told jail inmates

currently suffering from a mental disease or defect and agreed that he would continue to take his medication if released.

Following the interview, the risk panel members agreed that "the nature of Mr. Conrad's psychiatric symptoms make him prone to engage in dangerous behaviors that pose significant risk to the safety of others and the security of property" and that he "lack[ed] full appreciation, or acceptance of responsibility, for his history of aggression." *Id.* at 21, 23. The panel members were further of the opinion that Conrad "does not have the ability to independently cope with stressful living circumstances and life events" and that if he "returned to substance use, . . . discontinued psychiatric medications and quickly decompensated," as he had in the past, he would be "prone to experience paranoia and mood lability that further places him at elevated risk for engaging in behaviors that compromise the safety of others." *Id.* at 23.

In spite of these findings, the panel found that Conrad could be conditionally released to live at home with his wife, under supervision of this court's Probation Office, with further conditions including continued psychiatric treatment, no alcohol or drug use, and no threatening statements or aggressive behavior. *Id.* at 24–25.

---

that he had returned and found her still alive and poured bleach down her throat. *Id.* Her badly decomposed body was found several days later. Conrad asserts that he pleaded guilty to the lesser charge because the state had evidence of his involvement in the murder. Risk Assessment 15, ECF No. 173-1.

III.

The issue presented is whether Conrad has satisfied his burden of proof by a preponderance of the evidence that his release on conditions "would no longer create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4243(d), (f)(2). "In considering either a hospital-initiated or a patient-initiated request for conditional release, the district court is obligated to make its own independent judicial determination regarding the patient's dangerousness." *United States v. Hinckley*, 292 F. Supp. 2d 125, 131 (D.D.C. 2003). Moreover, "a court is not required to accept the opinion of any expert witness, or even the unanimous opinion of all the experts, but must consider all relevant evidence including the patient's hospital file, the court files and records in the case, and whatever illumination is provided by counsel." *Id.* (internal quotation marks and citation omitted). "[T]he existence of a substantial problem of danger in the reasonable future provides an adequate basis for the continued detention and confinement of an insanity acquitee who . . . has committed a violent criminal act unless the district court can make an affirmative finding that it is at least more probable than not that he will not be violently dangerous in the future." *United States v. Ecker*, 543 F.2d 178, 188 (D.C. Cir. 1976) (internal quotation marks and citation omitted).

I do not find that Conrad has met his burden, even in in the face of the opinion of the risk assessment panel at FMC Rochester.  Under the circumstances, and considering Conrad's history, I believe that the panel's recommendation vastly overestimates the degree of control over Conrad's behavior by this court and its Probation Office if he were to be released.

Conrad's home plan is woefully deficient.  He plans to live with his wife, Lynn Spencer Conrad, who was his codefendant in the 2011 case and pleaded guilty to providing firearms to her husband, a prohibited person.  Other charges against her, including distribution of controlled substances with her husband and lying on firearms purchase forms, were dismissed as part of her plea agreement.  Presentence Investigation Report, June 14, 2013, ¶¶ 1, 3, 51, 1:11CR00042-002, ECF No. 121.[5] They plan to live in a small single-wide trailer with a male friend in a rural area close to their former home, which has since burned down.  As a probation officer testified at the hearing, Conrad appears to do well in the highly structured prison setting, but not in his past environment to which he would be returning.  While electronic location monitoring by the Probation Office could be imposed as a condition, that would not prevent Conrad from obtaining illegal drugs.  The limited resources of the

---

[5]   In a search of the Conrads' home by local authorities in connection with the murder of Iris Gregory, the officers discovered a smoking device containing methamphetamine residue on a couch near to where Mrs. Conrad had been sitting.  They also found a narcotic pill on her person. *United States v. Conrad,* 923 F. Supp. 2d 843, 846 (W.D. Va. 2013).

Probation Office make unrealistic frequent face-to-face investigatory visits with Conrad at his home.  A group home that could provide close monitoring and daily structure has been suggested, but the risk panel noted that such a placement is not an option in Conrad's rural location.  Risk Assessment 12, ECF No. 173-1.

Moreover, while it is true that the Probation Office can arrange to be notified if Conrad fails to obtain his monthly injection of antipsychotic medication by a local mental health clinic, or otherwise stops therapy there, in that short period of time Conrad may decompensate and revert to drug use and his very violent ways, as he did before.  In those circumstances, no one in authority will be able to keep their eyes on Conrad and prevent the worst from happening.

IV.

The risk panel, in making its recommendation for conditional release, stated that "Conrad requires a well-formed plan designed to manage his risk of violence through monitoring, supervision, and mental health treatment."  Risk Assessment 23, ECF No. 173-1.   Under the present facts, there is no such plan, and I will deny the Bureau of Prisons' recommendation and Conrad's request for release under conditions.   For these reasons, it is **ORDERED** that the Certificate of Conditional Release is DENIED.

ENTER:  October 19, 2021

/s/  JAMES P. JONES
Senior United States District Judge