# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | Case No. 1:06CR00040 |
| ) | |
| v.                                              ) | **OPINION AND ORDER** |
| ) | |
| **SAMUEL ROBERT CONRAD, III,**   ) | JUDGE JAMES P. JONES |
| ) | |
| Defendant.                             ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Nancy Vicars-Dickenson, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

After being acquitted by reason of insanity, Samuel Robert Conrad, III, was committed to the Attorney General until his release, or his conditional release, "would no longer create a substantial risk" to the person or property of others. 18 U.S.C. § 4243(f). An official of the Bureau of Prisons (BOP) has certified to the court that Conrad has recovered from his mental disease or defect to such an extent that his conditional release would not create such risk. The question before the court is whether the defendant should be released, and if so upon what conditions, pursuant to 18 U.S.C. § 4243(f)(2). An evidentiary hearing was conducted, and the question

is ripe for determination. I find that Conrad should be released with appropriate conditions.[1]

## I. BACKGROUND.

This case has a complicated legal history, which I will summarize.

Conrad was indicted in this case in 2006 for illegally possessing firearms after having previously been convicted of a felony and while being an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(1), (3) (Count One) and knowingly possessing an unregistered, sawed-off shotgun, in violation of 26 U.S.C §§ 5841, 5861(d), (i), and 5871 (Count Two). The charges resulted from his arrest by police after a report that the defendant was jumping in front of vehicles armed with a Bowie knife. The officers ordered him to drop the knife, and he reportedly asked them to kill him and walked towards them waiving the knife. Upon investigation, numerous firearms were found at his residence. A toxicology report showed that he had tested positive for amphetamines, benzodiazepines, and cannabis.

---

[1] Following the hearing in this case, counsel for Conrad moved the court to recuse itself on the ground that the court gave the appearance of hostility to the Federal Public Defender in another matter. It was not asserted that the court gave any appearance of hostility to the defendant (or any defendant). The motion was denied after a hearing. *United States v. Conrad*, No. 1:06CR00040, 2023 WL 1795364 (W.D. Va. Feb. 6, 2023).

Conrad was committed for a mental examination at a BOP facility. After the examination Conrad was found to be competent but it was determined that he did not understand the wrongfulness of his criminal conduct because of his schizoaffective disorder, bipolar type.

On February 22, 2007, at a bench trial and without opposition by the government, Conrad was found not guilty solely by reason of insanity (NGRI). He was then committed to the custody of the BOP for an evaluation to determine his dangerousness. In the resulting report, it was opined that "an unconditional release to the community would be appropriate and would not pose a substantial risk of bodily injury to others or serious damage to the property of others." Fed. Med. Ctr. Butner, *Forensic Evaluation* 7–8, Apr. 3, 2007, ECF No. 57. Following a hearing and based upon the opinions contained in the report, I ordered Conrad released upon conditions, to be supervised by the court's probation office.[2] Conrad was released from custody on May 21, 2007.

A little over a year later, Conrad's sister-in-law, Iris Gregory, was found beaten to death at her home. Conrad was charged in state court with the first-degree murder of Ms. Gregory, but on February 4, 2010, and after two days of trial on that

---

[2] The conditions included that Conrad actively participate in outpatient mental health care, including taking his prescribed medications.

charge, Conrad entered an *Alford* plea to voluntary manslaughter and received an agreed sentence of four years and seven months of imprisonment.[3]

As a result of Conrad's guilty plea to the manslaughter charge, as well as his possession of a firearm, possession and use of illegal drugs, and association with a convicted felon, a probation officer of this court filed a petition seeking to revoke Conrad's conditional release. After a hearing, I revoked Conrad's conditional release pursuant to 18 U.S.C. § 4243(g) and ordered that he be taken into custody following service of his state sentence. Conrad appealed and on the motion of the government the court of appeals vacated the revocation as well as the original grant of conditional release. *United States v. Conrad*, No. 10-6962 (4th Cir. Jan. 5, 2012) (unpublished). The court of appeal determined that it was error to have released the defendant on conditions without first having made a separate determination that he should be committed for an indefinite period.[4]

---

[3] The other defendant in the Iris Gregory homicide case, Linwood Webster, was convicted of second-degree murder and given a 35-year sentence. *United States v. Conrad,* No. 1:06CR00040, 2021 WL 4860752, at *4 n.4 (W.D. Va. Oct. 19, 2021). It may be assumed from the disparity between the two sentences that the prosecution was either concerned at trial about the strength of its case against Conrad or that it determined that he was less culpable than his codefendant. Conrad has always denied his participation in the crime and contends that he accepted the agreed sentence only to resolve the matter on the best terms possible.

[4] As later explained by the court of appeals:

While subsection (e) [of § 4243] authorizes courts to determine dangerousness through a hearing, it allows only two forms of disposition — unconditional release or indefinite commitment; it does not authorize

Conrad completed his state sentence on September 4, 2012. In the meantime, he had been indicted in a new prosecution in this court, in which he was charged with unlawful possession of firearms and conspiracy to distribute controlled substances, the crimes occurring in 2007 and 2008. At the request of his lawyer in this new case, Conrad was committed for a mental evaluation. He was evaluated as to his competency to stand trial, and a report was submitted to the court opining that he was not competent to stand trial because he lacked a rational understanding of the charges and thus was unable to effectively assist counsel in his defense. The evaluator noted that Conrad's prognosis was "guarded" in that "Schizoaffective Disorder is a lifelong condition with variable symptomology, and future hospital admissions are probable." Metro. Corr. Ctr., N.Y.C., *Competency to Stand Trial Evaluation* 11, United States v. Conrad, No. 1:11CR00042-001 (W.D. Va. Apr. 24, 2012), ECF No. 40-1.

---

conditional release. The only provision of the statute that does, subsection (f), was inapplicable because it applies only if the acquittee was previously indefinitely committed, which Appellant was not, and only upon recommendation by the commitment facility director. This error only came to our attention in 2010 when Appellant appealed the revocation of his conditional release.

*United States v. Conrad*, 776 F.3d 253, 256 (4th Cir. 2015). In other words, I erred procedurally by originally releasing Conrad on conditions without first committing him indefinitely.

After receiving the report of that evaluation, I held a competency hearing and found that Conrad was suffering from a mental disease rendering him mentally incompetent. As a result, I committed him to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d). Based on a new report from evaluators, I held another competency hearing in the new case on December 14, 2012, and found that Conrad's competency had been restored. He subsequently entered a guilty plea and was sentenced on June 20, 2013, to eight years of imprisonment. It was reported that during this federal imprisonment he was "stable" and "not suffering from acute symptoms of a major mental illness." Fed. Med. Ctr. Rochester, *Risk Assessment* 4, Apr. 12, 2022, ECF No. 181

I decided to delay a new hearing on the issue left by the court of appeal's 2012 order — whether Conrad should be conditionally released — until after his service of the new federal sentence imposed, when his future dangerousness could be better determined. Op. & Order, August 26, 2013, ECF No. 141. Conrad appealed the order, but the court of appeals affirmed. *United States v. Conrad,* 776 F.3d 253, 262 (4th Cir. 2015).

In 2019, in anticipation of his release from his federal sentence, Conrad was committed for an evaluation of his dangerousness pursuant to 18 U.S.C. § 4243(b). Following that evaluation, on July 2, 2019, the Warden of FMC Butner issued a Certificate of Mental Disease or Defect and Dangerousness. The evaluators opined

that "[g]iven Mr. Conrad's history, there is a risk that he may engage in threats, physical violence, and possession of weapons that could escalate to serious or life-threatening harm, particularly in the context of treatment noncompliance or substance abuse." Fed. Med. Ctr. Butner, *Forensic Evaluation* 13, June 15, 2019, ECF No. 158. Following a hearing in which the defendant presented no contrary evidence, Conrad was accordingly committed on October 4, 2019, for an indefinite period pursuant to § 4243(a).

Conrad was shortly transferred from FMC Butner to his current facility, FMC Rochester, arriving there on December 18, 2019. Following a risk assessment report dated six weeks later on February 2, 2021, the Warden of FMC Rochester issued a certification calling for Conrad's release on conditions. A hearing was held on that certification on September 15, 2021, and I denied conditional release, based in large part on the lack of an appropriate home plan.[5] There was no appeal. Ten months later the Warden of FMC Rochester filed the present certification for release on conditions.

After appointment of counsel for the defendant, an evidentiary hearing on the present certification was held on August 19, 2022. In addition to Conrad, the

---

[5] I stated then that "Conrad's home plan is woefully deficient. He plans to live with his wife . . . who was his codefendant in the 2011 case and pleaded guilty to providing firearms to her husband, a prohibited person. . . . They plan to live in a small single-wide trailer with a male friend in the rural area close their former home, which has since burned down." Op. & Order 12, Oct. 19, 2021, ECF No. 179.

witnesses were Melissa J. Klein, Ph.D., Chief of Psychology at FMC Rochester, Melissa Stiltoner, Director of Admissions at Gateway Homes, Inc., a mental health facility near Richmond, Virginia, and David Lewis, a coordinator for NGRI persons served by Gateway Homes.[6]

## II. LEGAL STANDARDS.

The issue presented is whether it has been shown by a preponderance of the evidence that Conrad's release on conditions "would no longer create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4243(d), (f)(2). "In considering either a hospital-initiated or a patient-initiated request for conditional release, the district court is obligated to make its own independent judicial determination regarding the patient's dangerousness." *United States v. Hinckley*, 292 F. Supp. 2d 125, 131 (D.D.C. 2003). Moreover, "a court is not required to accept the opinion of any expert witness, or even the unanimous opinion of all the experts, but must consider all relevant evidence including the patient's hospital file, the court files and records in the case, and whatever illumination is provided by counsel." *Id.* (internal quotation marks and citation omitted). "[T]he existence of a substantial problem of danger in the reasonable future provides an adequate basis for the continued detention and

---

[6] With the written consent of Conrad, the testimony of the witnesses was by remote audio and video transmission.

confinement of an insanity acquitee who . . . has committed a violent criminal act unless the district court can make an affirmative finding that it is at least more probable than not that he will not be violently dangerous in the future." *United States v. Ecker*, 543 F.2d 178, 188 (D.C. Cir. 1976) (internal quotation marks and citation omitted).

On behalf of Conrad, it is argued that he be granted conditional release, subject to residence at Gateway Homes and participation in a regimen of mental health care and treatment under the supervision of a probation officer. The government objects to such conditional release based on Conrad's history and because it is possible he would be able to leave Gateway Homes without authorization.

### III. FINDINGS OF FACT.

The court makes the following findings of fact, based on the entire record of the case.

Mr. Conrad is now 60 years old. He has "a history of manic and depressive symptoms including excessive energy, racing thoughts, inability to sleep, crying, sad mood, and suicidal ideation." Fed. Med. Ctr. Rochester, *Risk Assessment* 3, Apr. 12, 2022, ECF No. 181. Conrad suffers from schizoaffective disorder, bipolar type, which is now in remission as a result of his treatment. He first saw a mental health provider at age 13 and was first hospitalized at age 16 because of his anger issues.

He left home as a teenager and reported three separate head injuries over the years from DUI-caused vehicle accidents, causing hospitalization and shorts periods of memory loss and slurred speech. He has had a limited education and employment history and has been receiving social security disability income since 2000 based on his mental disorders. He has a long history of substance abuse, including alcohol and drugs, beginning as a teenager.

Conrad attempted suicide by hanging at age 25 but was discovered in time and saved. He was treated on an outpatient basis for several years but discontinued that treatment and at age 43 was involuntarily committed to a state mental hospital. He reported 10 lifetime arrests for domestic violence, possession of cocaine, and driving under the influence. Following his conditional release by this court in 2007, he suddenly stopped taking his medication and began using methamphetamine. He had a violent confrontation with a motorcycle gang member, whom he reportedly "nearly 'beat [ ] to death'" with a baseball bat. *Id.* at 9. Conrad contends that the person had a knife and was stabbing him, and he was defending himself.

Since being committed in October of 2019 and incarcerated at FMC Rochester, Conrad has "demonstrated good insight" into his substance abuse history and mental illness. *Id.* at 6. He has been compliant with his mental health medication and recognizes his continued need for such treatment.

In order to remain free from substance abuse and the risk of violence, Conrad requires a highly structured residential program with consistent and effective mental health treatment. I find that the proposed Gateway Homes program complies with these requirements. While the government correctly points out that this program does not have the same security as a federal medical center, and that it is possible that Conrad could thus escape from the facility, I find that this risk is overborne by Conrad's recent history. I credit the testimony of Dr. Klein at the hearing that Conrad's present stability and willingness to engage in treatment together with the level of care provided by Gateway Homes would mitigate that risk. In addition, residence in Virginia would allow more frequent family visits in contrast to confinement in a distant BOP facility, which would provide him with additional support, as opined by Dr. Klein.

I find from a preponderance of the evidence that the defendant has recovered from his mental disease or defects to such an extent that his conditional release, under a prescribed regimen of medical, psychiatric, or psychological care and treatment, would no longer create a substantial risk to others or the property of others.

IV.  CONCLUSION.

For the foregoing reasons, it is **ORDERED** that the Certificate of Conditional Release, ECF No. 181, is GRANTED and the defendant Samuel Robert Conrad, III, is hereby released, conditional on the performance of the following conditions:

1. That he reside at the Gateway Homes Supported Living Apartments (SLPA) located on the Chesterfield Campus at 11901 Reedy Branch Road, Chesterfield, Virginia 23838.  He must comply with all rules and expectations of the program.  Any change from this residence must be approved by the Court in advance;

2. That he be supervised by U.S. Probation and follow all instructions given by the supervising Probation Officer;

3. That he actively participate in, and cooperate with, a regimen of mental health care, drug and alcohol treatment, and psychiatric aftercare as directed by the U.S. Probation Officer and administered by the treating mental health provider.  This is to include his voluntary admission to an inpatient facility for stabilization should it be deemed necessary.  He must follow all the rules, regulations and instructions of the treatment staff and comply with the treatment regimen recommended;

4. That he continue to take such medication, including injectable units, as shall be prescribed for him by the medical provider;

5. That he waive his rights to confidentiality regarding his mental health treatment in order to allow sharing of information with the supervising U.S. Probation Officer and other mental health treatment providers, who will assist in evaluating his ongoing appropriateness for community placement;

6. That he must refrain from the use of alcohol and illegal drug usage, as well as the abuse of over-the-counter medications, and submit to random urinalysis testing as warranted by treating mental health staff and/or the probation officer.  This also includes participating in substance abuse treatment as deemed necessary;

7. That he not have in his possession at any time actual or imitation firearms or other deadly weapons and he may not write, say, or communicate threats.  He must submit to a warrantless search on request of his U.S. Probation Officer or any law enforcement officer of his person or property for the purpose of determining compliance with this provision and must permit confiscation of any such contraband;

8. That he must not commit any federal, state, or local crimes and must immediately report all contact with law enforcement to the U.S. Probation Officer;

9. That he must wear a GPS location monitoring device until further order of the Court, with any timeouts approved in advance by the U.S. Probation Officer, and abide by all technology requirements;

10. That he must remain at all times at the Gateway Homes facility unless he is escorted by a staff member on approved outings with other participants, as approved in advance by the U.S. Probation Officer;

11. That he must meet weekly with a psychiatrist and weekly with a licensed clinical psychologist at the Gateway Homes facility, with weekly reports sent to the U.S. Probation Officer until such time as the Probation Officer determines that such reports and visits can be with less frequency, which shall be in consultation with the psychiatrist and psychologist; and

12. That he must participate in at least 32 hours weekly of structured activities such as vocational programming, life skills, and other therapeutic programs.

ENTER: April 27, 2023

/s/  JAMES P. JONES
Senior United States District Judge